# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **HARRY LEE BOUDREAUX** | **CIVIL ACTION NO. 6:17-0517** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **U.S. FRAMING, ET AL.** | **MAGISTRATE JUDGE WHITEHURST** |

### REPORT AND RECOMMENDATION

Pending before the undersigned on referral from the district judge are two motions to dismiss, as follows: (1) Motion to Dismiss Pursuant to Rule 12(b)(6) [Doc. 52] filed by defendant CJR Framing, Inc., and (2) Rockingham Casualty Company's Rule 12(b)(6) Motion to Dismiss [Doc. 54]. In their motions, the movants seek dismissal of the claims against them on grounds the plaintiff's claims against defendant CJR Framing, Inc. are time-barred under certain provisions of the Texas Business Organizations Code ("TBOC"). For the following reasons, it is RECOMMENDED that both motions be GRANTED.

### *I. Background*

The instant lawsuit arises out of a construction site accident wherein plaintiff Harry Lee Boudreaux allegedly sustained injuries while working on an apartment building project in Lafayette, Louisiana on August 22, 2016. In his original Complaint, Boudreaux alleges he was working in his capacity as an employee of DeMar Staffing and was assisting a co-worker with making repairs to a fence at the apartment complex, while employees of U.S. Framing were installing roof decking

at the same apartment complex. Plaintiff alleges that while he was working, a piece of oriented strand board fell from the roof of Building 5, striking him in the back and injuring him.

The plaintiff sued U.S. Framing, Inc. ("U.S. Framing") in the Fifteenth Judicial District Court for the State of Louisiana. U.S Framing removed the matter to this Court on the basis of diversity jurisdiction on April 11, 2017. Thereafter, on June 9, 2017, Boudreaux amended his complaint to add CJR Framing, along with CJR's alleged insurer, Rockingham Ins. Co., and Grange Mutual Casualty Co., the alleged insurer of U.S. Framing. In his First Amended Complaint, Boudreaux alleges CJR Framing was one of U.S. Framing's subcontractors that was installing the roof decking at Building 5 that allegedly injured him. Subsequently, Louisiana Construction & Industry Self Insurers Fund ("the Fund") filed a Complaint of Intervention, seeking to assert its rights, if any, as Boudreaux's workers' compensation carrier.

In the instant motions, CJR Framing seeks dismissal of the claims against it contained in the plaintiff's Amended Complaint, as well as the claims asserted by the Fund, on grounds the claims are time-barred under Texas corporate law, which applies by way of Louisiana's choice of law provisions. Rockingham -- which was sued by the plaintiff and the Fund under the Louisiana Direct Action Statute, La. Rev. Stat. §22:1269 – seeks dismissal of the claims alleged against it by Boudreaux and the Fund on grounds the Direct Action Statute grants a procedural right of action against an insurer only where the plaintiff has a substantive cause of action against

2

the insured, which Rockingham argues does not exist because of the time bar contained in the Texas corporate statutes. The undersigned will address each motion in turn.

## *II. Legal Standard*

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir.2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949–50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Id*. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the

complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir.2007), the claim must be dismissed.

## *III. Analysis*

### A. CJR Framing's Motion to Dismiss [Doc. 52]

CJR Framing seeks dismissal of the claims against it contained in the plaintiff's Amended Complaint, as well as the claims asserted by the Fund, on grounds the claims are time-barred under Texas corporate law, which applies by way of Louisiana's choice of law provisions.

As an initial matter, the undersigned notes the parties do not dispute that Texas corporate law governs the issue of CJR Framing's capacity to be sued in this court. Indeed, it is well-settled that a corporation's capacity to sue or be sued in federal court is determined by the law of the state in which it is incorporated. *See* Fed. R. Civ. P. 17(b).[1] *See also Legeaux v. Borg-Warner Corp.*, 2016 WL 6166166, at *2 (E.D. La. Oct. 24, 2016). When "deciding whether a dissolved corporation can be sued, federal courts applying Louisiana law have held that Louisiana will apply the law of the corporation's state of incorporation." *Legeaux*, 2016 WL 6166166, at *2, *citing Bisso Marine Co. v. Conmaco, Inc.*, No. 99-227, 1999 WL 804072, at *3 (E.D. La. Oct. 7,

---

[1] Rule 17(b)(2) of the Federal Rules of Civil Procedure states:
(b) Capacity to Sue or Be Sued. Capacity to sue or be sued is determined as follows:
[ . . . ]
    (2) for a corporation, by the law under which it was organized; and
Fed. R. Civ. P. 17(b)(2).

1999) (Vance, J.); *see also Lone Star Industries, Inc. v. Redwine*, 757 F.2d 1544, 1548, 1548 n.3 (5th Cir. 1985) (applying Delaware law to determine viability of Delaware corporation after dissolution). CJR Framing argues that under Texas law, the claims asserted against it by the plaintiff and the Fund are time-barred, because CJR Framing is a dissolved corporation against which a claim may only be brought within a three-year time period.

Under Texas corporate law, a "terminated filing entity" includes any corporation whose charter has been forfeited under the Texas Tax Code, unless the forfeiture has been set aside. *See* TEX. BUS. ORGS. CODE §§1.002(22), 11.001(4)(B); 11.001(5); TEX. TAX. CODE §§171.302, 171, 309 (permitting the Texas Secretary of State to forfeit a corporation's charter if the Secretary receives a certification by the state tax comptroller and the corporation does not revive its forfeited corporate privileges within 120 days of forfeiture). CJR Framing argues its charter was forfeited on February 21, 2014, and, therefore, it is a "terminated filing entity" within the meaning of the TBOC.

Under Texas law, a "terminated filing entity" continues in existence until the third anniversary of the effective date of the entity's termination:

> (a) Notwithstanding the termination of a domestic filing entity under this chapter, the terminated filing entity continues in existence until the third anniversary of the effective date of the entity's termination only for purposes of:
>
> > (1) prosecuting or defending in the terminated filing entity's name an action or proceeding brought by or against the terminated entity;
> >
> > (2) permitting the survival of an existing claim by or

5

against the terminated filing entity;

\*\*\*

(b) A terminated filing entity may not continue its existence for the purpose of continuing the business or affairs for which the terminated filing entity was formed unless the terminated filing entity is reinstated under Subchapter E.1

(c) If an action on an existing claim by or against a terminated filing entity has been brought before the expiration of the three-year period after the date of the entity's termination and the claim was not extinguished under Section 11.359, the terminated filing entity continues to survive for purposes of:

>(1) the action until all judgments, orders, and decrees have been fully executed; and

>(2) the application or distribution of any property of the terminated filing entity as provided by Section 11.053 until the property has been applied or distributed.

Tex. Bus. Orgs. Code §§11.356(a)(1), (a)(2), (b), (c)(1)-(2) (emphasis added).

Section 11.001(3) defines "existing claim" as follows:

(3) "Existing claim" with respect to an entity means:

>(A) a claim that existed before the entity's termination and is not barred by limitations; or

>(B) a contractual obligation incurred after termination.

Tex. Bus. Orgs. Code §11.001(3).

Section 11.359 of the Texas Business Organizations Code states that any "existing claims" against a "terminated filing entity" cease to exist unless they are timely brought within three (3) years, as follows:

(a) ***Except as provided by Subsection (b), an existing claim by or against a terminated filing entity is extinguished unless an action or proceeding is brought on the claim not later than the third anniversary***

6

*of the date of termination of the entity.*

(b) A person's claim against a terminated filing entity may be extinguished before the period prescribed by Subsection (a) if the person is notified under Section 11.358(a) that the claim will be resolved under Section 11.358 and the person:

    (1) fails to properly present the claim in writing under Sections 11.358(c) and (d); or

    (2) fails to bring an action on a claim rejected under Section 11.358(e) before:

        (A) the 180th day after the date the notice rejecting the claim was mailed to the person; and

        (B) the third anniversary of the effective date of the entity's termination.

TEX. BUS. ORGS. CODE §11.359 (emphasis added).

Thus, under Texas law, a dissolved corporation is not liable for a post-dissolution claim. *See Anderson Petro-Equipment, Inc. v. State of Texas*, 317, S.W.3d 812, 817 (Tex. App – Austin 2010)[2], *citing See Hunter v. Forth Worth*

---

[2] *Anderson* addressed the provisions of Texas's prior corporate statutes. As the court explained in *Anderson*:

> On January 1, 2010, the Texas Business Corporation Act expired and was replaced by the Texas Business Organizations Code. See Tex. Bus. Corp. Act Ann. art 11.02(B) (West Supp. 2009) ("This Act expires January 1, 2010.").
>
> With the exception of filing fee requirements, the provisions of the business organizations code did not apply until January 1, 2010 to entities formed before January 1, 2006, such as Anderson Petro, unless the entity elected early adoption. See Tex. Bus. Org.Code Ann. §§ 402.001–.005 (West Pamph. 2007). There is nothing in the record to indicate that Anderson Petro elected early adoption. At the time of trial, therefore, the operative statute was the business corporation act.
>
> **In any event, the business organizations code made no substantive changes to business corporation act article 7.12**. See id. §§ 11.001, 11.051, 11.055, 11.152, 11.254, 11.311, 11.351, 11.356–.359.

*Anderson*, 317 S.W.3d at 815, n.2 (emphasis added).

*Capital Corp.*, 620 S.W.2d 547, 553 (Tex. 1981); *Landrum v. Thunderbird Speedway, Inc.*, 97 S.W.3d 756, 758–59 (Tex.App.-Dallas 2003).

In the instant case, it is undisputed that CJR Framing forfeited its charter on February 21, 2014, and the three year "grace period" began to run on that date. CJR Framing argues the claims alleged by Boudreaux and the Fund do not qualify as "existing claims" because they arose on August 22, 2016 – more than 2 years after CJR forfeited its charter on February 21, 2014. Moreover, CJR Framing argues that because the claims alleged against CJR Framing were not brought until June 9, 2017 (by the plaintiff) and July 26, 2017 (by the Fund), which is more than three years after CJR Framing's dissolution, the claims are time-barred as a matter of law. This Court agrees.

The plaintiff's argument that Article 2324(C) of the Louisiana Code of Civil Procedure[3] – which interrupts prescription against all joint tortfeasors when one joint tortfeasor is joined -- is unpersuasive. First, this Court notes the plaintiff fails to support his argument that the provisions of the Louisiana Code of Civil Procedure are

---

[3] Article 2324 states:

A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.

B. If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable.

C. Interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors.

La. Code. Civ. P. 2324.

even applicable in this matter, given the applicability of the TOBC under the Louisiana choice of law provisions. Moreover, this Court's own research shows that Section 11.359 of the TOBC is a survival statute, rather than a statute of limitations that can be tolled or otherwise function to extend the delay period contained therein.[4] Indeed, while the undersigned was unable to find any cases defining Section 11.359 as a survival statute *per se*, the undersigned found numerous cases wherein Texas courts characterized the prior version of Section 11.359 (that is, Section 7.12 of the Texas Business Corporation Act) as a survival statue. For example, in *Gomez v. Pasadena Health Care Mgmt, Inc.*, the court explained:

---

[4] CJR Framing argues Section 11.359 is a statute of repose, which is defined by Texas courts as follows:

> Generally, a statute of repose specifies a longer period than that found in the statute of limitations applicable to the same cause of action. Statutes of repose begin to run on a readily ascertainable date, and unlike statutes of limitations, a statute of repose is not subject to judicially crafted rules of tolling or deferral.
>
> Indeed, the key purpose of a repose statute is to eliminate uncertainties under the related statute of limitations and to create a final deadline for filing suit that is not subject to any exceptions, except perhaps those clear exceptions in the statute itself. Without a statute of repose, professionals, contractors, and other actors would face never-ending uncertainty as to liability for their work. Insurance coverage and retirement planning would always remain problematic, as would the unending anxiety facing potential defendants. In recognizing the absolute nature of a statute of repose, we have explained that "while statutes of limitations operate procedurally to bar the enforcement of a right, a statute of repose takes away the right altogether, creating a substantive right to be free of liability after a specified time." The Legislature could reasonably conclude that the general welfare of society, and various trades and professions that serve society, are best served with statutes of repose that do not submit to exceptions even if a small number of claims are barred through no fault of the plaintiff, since "the purpose of a statute of repose is to provide 'absolute protection to certain parties from the burden of indefinite potential liability.'" The whole point of layering a statute of repose over the statute of limitations is to "fix an outer limit beyond which no action can be maintained." One practical upside of curbing open-ended exposure is to prevent defendants from answering claims where evidence may prove elusive due to unavailable witnesses (perhaps deceased), faded memories, lost or destroyed records, and institutions that no longer exist.

*Methodist Healthcare Sys. of San Antonio, Ltd., L.L.P. v. Rankin*, 307 S.W.3d 283, 286–87 (Tex. 2010) (internal citations omitted).

While this Court was unable to find any cases specifically defining either Sections 11.359 or 7.12 as a statute of repose, the undersigned found numerous cases wherein Section 7.12 was defined as a survival statute.

> However, Article 7.12 is a survival statute, not a statute of limitations. The distinction between a statute of limitations and a survival statute is that, "a statute of limitations affects the time that a stale claim may be brought while a survival statute gives life for a limited time to a right or claim that would have been destroyed entirely but for the statute." Article 7.12, a survival statute, "arbitrarily extend[s] the life of the corporation to allow remedies connected with the corporation's existence to be asserted." Thus, a survival statute creates a right or claim that would not exist apart from the statute. And, the general rule is that when a cause of action and a remedy for its enforcement are derived from a statute rather than the common law, the statutory provisions are "mandatory and exclusive, and must be complied with in all respects or the action is not maintainable."
>
> These distinctions between a statute of limitations and a survival statute govern the outcome here. When a plaintiff fails to sue within the period provided by a statute of limitations, the claim still exists, but, unless the statute of limitations affirmative defense is waived, it can no longer be brought by that plaintiff. Conversely, if a party fails to sue within the time limits of the survival statute, there is no longer an entity that can be sued.

246 S.W.3d 306, 315-16 (Tex. App – Houston 2008) (internal citations omitted).

Like its predecessor statute, Section 11.359 states that ***an existing claim by or against a terminated filing entity is <u>extinguished</u> unless an action or proceeding is brought on the claim not later than the third anniversary of the date of termination of the entity.*** Thus, it appears that Section 11.359 operates as more of a survival statute than a statute of repose. Regardless, whether couched in terms of a statute or repose or a survival statute, it is clear that claims must be alleged against a dissolved corporation within three years of the date of the corporation's dissolution in order to be viable.

Under Section 11.359 of the TOBC, the plaintiff was required to file suit against CJR Framing within three years of CJR Framing's dissolution, or the claim

10

would thereafter be extinguished. The plaintiff concedes he did not file suit against CJR Framing until June 9, 2017, more than three years after CJR Framing's dissolution, and the record is clear that the Fund did not file its claims against CJR Framing within the three year period. After its dissolution and passage of the three-year period, a corporation cannot be sued because it no longer exists and the law provides no further remedy against it.[5] Consequently, the claims asserted by the plaintiff and the Fund against CJR Framing are time-barred and should be DISMISSED WITH PREJUDICE.

**B. Rockingham's Motion to Dismiss [Doc. 54]**

Rockingham seeks dismissal of the claims alleged against it by Boudreaux and the Fund on grounds the Direct Action Statute grants a procedural right of action against an insurer only where the plaintiff has a substantive cause of action against the insured, which Rockingham argues does not exist because of the time bar contained in the Texas corporate statutes.

It is well-settled that "[t]he [Louisiana] direct action statute does not create an independent cause of action against the insurer," but instead "merely grants a procedural right of action against the insurer where the plaintiff has a substantive cause of action against the insured." *See Soileau v. Smith Tryue Value & Rental*, 144 So.3d 771 (La. 2013); *see also Marsh Eng'g Inc. v. Parker*, 883 So.2d 1119, 1127 (La. App. 3rd Cir. 9/29/04), *writ denied*, 893 So.2d 73 (La.1/28/05). Thus, "[w]hen

---

[5] Plaintiff's contention that Texas law authorizes a court to revoke an entity's termination as a result of fraud does not change this conclusion. There is no statutory text expressly stating that the revocation authorized under the provision cited by plaintiff (Section 11.153 of the TOBC) would revive any claims extinguished by Section 11:359 of the TOBC.

the injured party's substantive cause of action against the original tort feasor [sic] is extinguished, the procedural right of direct action against the insurer, which is purely remedial and ancillary to the cause, must fall by operation of law." *See Williams v. SIF Consultants of Louisiana, Inc.*, 103 So.3d 1172, 1177, *writ denied*, 109 So. 3d 381 (La. 2013).

In the instant case, the undesigned finds the claims asserted against CJR Framing are time-barred. As the claims alleged by the plaintiffs and the Fund against Rockingham are time-barred, the ancillary claims asserted by the plaintiffs and the Fund against Rockingham cannot be maintained as a matter of law and should be DISMISSED WITH PREJUDICE.

*Conclusion*

Based on the foregoing analysis, the under signed recommends that the Court **GRANT** the Motion to Dismiss Pursuant to Rule 12(b)(6) [Doc. 52] filed by defendant CJR Framing, Inc., and (2) Rockingham Casualty Company's Rule 12(b)(6) Motion to Dismiss [Doc. 54], and that the claims alleged by the plaintiff and the Louisiana Construction & Industry Self Insurers Fund against both entities be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the

time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

Signed at Lafayette, Louisiana, this 21st day of November, 2017.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**